## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN
## MADISON DIVISION

| | |
|---|---|
| Janet Pecher, Individually and as Special Administrator for the Estate of Urban Pecher, Deceased,<br><br>                                        Plaintiff,<br>                    v.<br><br>Weyerhaeuser Company, *a corporation;*<br>3M Company, *a corporation*;<br>Donaldson Company, Inc., *a corporation*;<br>Gardner Denver, Inc., *a corporation*;<br>Metropolitan Life Insurance Company*, a corporation*;<br>Owens-Illinois, Inc., *a corporation*;<br>Joseph Wendlick, *an individual*;<br><br>                                        Defendants. | Case No. 14-147 |

### COMPLAINT

Now comes the plaintiff, Janet Pecher, by and through her attorneys, Cascino Vaughan Law Offices, Ltd., and complains against the above defendants as follows:

### JURISDICTION AND PARTIES

1. Plaintiff Janet Pecher is the widow of decedent Urban Pecher and is an adult citizen and resident of Marshfield, Wisconsin.

2. Decedent Urban Pecher died in the state of Wisconsin on August 18, 2013. Prior to his death, decedent was an adult citizen and resident of Marshfield, Wisconsin.

3. Defendant Weyerhaeuser Company ("Weyerhaeuser") is the former owner of the Marshfield, Wisconsin door manufacturing plant ("Marshfield plant") where asbestos products were manufactured and used. Defendant Weyerhaeuser Company is also legally responsible for the conduct of Roddis Plywood Corporation.

4. Defendant 3M Company ("3M") designed, manufactured, and sold masks, including without limitation the 3M 8710. 3M represented that its masks prevented exposure to asbestos, but they failed to protect Decedent against such exposures.

5. Defendant Donaldson Company, Inc. ("Donaldson") is responsible for the conduct of Carter Day. Carter Day designed, manufactured, and sold dust control devices, including without limitation baghouse dust collectors. Carter Day represented that its baghouses prevented asbestos dust from contaminating the plant and the surrounding environment. However, the Carter Day bag filter houses at the Marshfield plant routinely malfunctioned, exposing decedent to asbestos dust both in the plant and in the surrounding environment.

6. Defendant Gardner Denver, Inc. ("Gardner Denver") is responsible for the conduct of Clarkson Industries, Inc. Clarkson represented its Hoffman dust collection systems as preventing asbestos dust from contaminating the plant and the surrounding environment. However, the Hoffman system at the Marshfield plant routinely malfunctioned, exposing decedent to asbestos dust both in the plant and in the surrounding environment.

7. Defendant Metropolitan Life Insurance Company ("MetLife") conspired and acted to conceal information about the health hazards of asbestos from both individual end-users and industry.

8. Defendant Owens-Illinois, Inc. ("O-I") manufactured, sold, and designed asbestos products, including without limitation fireproof door cores, pipe insulation, and block insulation. Owens-Illinois Inc. also licensed a process patent for the manufacture of fire doors incorporating asbestos-containing cores to Roddis Plywood Corporation and Weyerhaeuser Company.

9. Defendant Joseph Wendlick ("Wendlick") was Weyerhaeuser's Industrial Hygienist. As such, he was responsible for the safety procedures as well as the specification, installation, and/or maintenance of engineering controls and protective equipment—including without limitation baghouses, dust collection systems, and masks— at the Marshfield plant. Decedent was exposed to asbestos dust as a result of improper specification, installation, and/or maintenance of engineering controls at the Marshfield plant.

10. Defendant Joseph Wendlick is an individual and resides in the State of Washington. All other defendants are corporations, none of which is incorporated in or has its principal place of business in the State of Wisconsin. *See* Exhibit A for the states of incorporation and principal place of business of each defendant.

11. Jurisdiction is based on diversity of citizenship of the parties hereto under Title 28, United States Code, §1332.

12. The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

13. Venue is proper pursuant to Title 28, United States Code, §1391.

## GENERAL ALLEGATIONS

14. Decedent inhaled airborne asbestos fibers released from operations at Weyerhaeuser's door manufacturing plant, f/k/a Roddis Plywood Corporation, in Marshfield, Wisconsin, as a result of the following:

    a. his employment at the Marshfield plant beginning in 1953;

    b. his residence in the surrounding community;

    c. Weyerhaeuser's transport of asbestos fibers to other locations frequented by decedent.

15. During the period of his exposures, decedent was ignorant of the dangerous nature of

asbestos and of the nature of the risks incurred by working with or near asbestos-containing materials.

16. As a direct and proximate result of the conduct of defendants, decedent suffered from asbestos related diseases, including without limitation malignant mesothelioma diagnosed post-mortem on November 27, 2013, and asbestosis.

17. The asbestos disease process and injury began before April, 1994.

18. All exposures to asbestos that decedent received contributed to and caused the decedent's asbestos related conditions.

19. As a result of the asbestos related diseases, decedent died on August 18, 2013.

20. Decedent suffered great pain, physical impairment, and great mental pain and anguish. He is liable for large sums of money for medical and hospital care, and suffered losses to his personal property and possessions. Further, as a result of decedent's death, funeral, cemetery, and related expenses and costs have been incurred.

21. At all times, plaintiff Janet Pecher was the wife of decedent and was cohabitating with him and was enjoying his services, companionship, society and relationship.

22. As a result of decedent's disease and his resulting death, his next of kin have suffered and will suffer in the future pecuniary losses and have suffered and will suffer in the future a loss of society and companionship with decedent.

23. As a direct and proximate result of the one or more of the wrongful acts or omissions of the defendants, plaintiff

   a. has been deprived of decedent's services, companionship, society, and relationship from the time of his injury;

   b. has been hindered and prevented from transacting and attending to her usual business and personal affairs.

24. Plaintiff brings this claim as a wrongful death action pursuant to Wis. Stat. § 895.04 and as a survival action pursuant to Wisconsin law.

## COUNT I - PRODUCT LIABILITY - NEGLIGENCE

25. Plaintiff brings this claim for negligence and restates and realleges the allegations in paragraphs 1 - 24 above.

26. Plaintiff brings this claim against Weyerhaeuser and O-I for designing, manufacturing, selling, erecting, installing, or removing asbestos products or fibers to which decedent may have been exposed.

27. It was reasonably foreseeable that decedent and other workers would be working with or in the proximity of defendant's asbestos products and be exposed to airborne asbestos fibers.

28. Defendant had a duty to exercise reasonable care for the safety of decedent and others who worked with or were exposed to the defendant's asbestos products.

29. Defendant knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and or death.

30. Decedent did not know that asbestos products were dangerous or harmful at the time of his exposures.

31. Defendants had a duty to exercise reasonable care for the safety of decedent and others who worked with or were exposed to the defendants' asbestos products.

32. Each defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

    a. Failed to adequately warn decedent or others of the health hazards of asbestos;

    b. Failed to investigate or test for the health effects of asbestos;

    c. Failed to instruct decedent, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released from asbestos products or

asbestos insulated equipment;

d. Used defectively designed asbestos-containing products or asbestos-insulated equipment which did not protect against or prevent the release of asbestos fibers when substitutes were available;

e. Failed to warn decedent or others of the danger of the airborne asbestos fibers released after the products or equipment were installed at the premises;

f. Used unsafe techniques, methods, or processes in the installation or removal of asbestos containing products.

33. As a direct and proximate result of the acts and omissions of the defendants above, decedent and plaintiff were injured as described above.

## COUNT II – PRODUCT LIABILITY (UNREASONABLY DANGEROUS PRODUCT)

34. Plaintiff brings this claim for strict product liability and restates and realleges the allegations in paragraphs 1 – 33 above.

35. This claim is asserted against Weyerhaeuser and O-I.

36. Defendants are in the business of selling asbestos products.

37. Defendants placed their asbestos products into the stream of commerce with the expectation that they would reach decedent and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendants.

38. Decedent, or persons working in his proximity, removed, installed, and handled, or was otherwise exposed to, the defendants' asbestos products in the conditions in which they left the possession or control of such defendants.

39. Defendants' asbestos products were defective and unreasonably dangerous at the time they left the possession or control of defendants in one or more of the following ways:

a. Failed to adequately warn decedent or others of the health hazards of asbestos;

    b.      Failed to investigate or test for the health effects of asbestos;

    c.      Failed to instruct decedent, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released from asbestos products or asbestos insulated equipment;

    d.      Used defectively designed asbestos-containing products or asbestos-insulated equipment which did not protect against or prevent the release of asbestos fibers when substitutes were available;

    e.      Failed to warn decedent or others of the danger of the airborne asbestos fibers released after the products or equipment were installed at the premises;

    f.      Failed to specify proper techniques, methods or processes in the installation or removal of asbestos containing products

40. As a direct and proximate result of the acts and omissions of the defendants above, decedent and plaintiff were injured as described above.

## COUNT III - NEGLIGENCE

41. Plaintiff brings this count for negligence against defendant Weyerhaeuser Company.

42. Plaintiff restates and realleges the general allegations in lines 1 - 40 above.

43. Weyerhaeuser is responsible for the ownership and operation of the Weyerhaeuser door manufacturing facility (f/k/a Roddis Plywood Corporation) in Marshfield during the period of plaintiff's exposures.

44. Weyerhaeuser, during its operations of the Marshfield plant, caused asbestos fibers to be released and contaminate the air:

    a.      in the community surrounding the plant; and

    b.      in areas more distant from the plant by transport through various means, including without limitation contaminated worker clothing and vehicles hauling asbestos waste materials to various sites throughout Marshfield.

45. The inhalation of asbestos fibers from contaminated air in the community surrounding the plant, housing, vehicles, and other places frequented by decedent is unrelated to any

employment relationship with Weyerhaeuser.

46. It was reasonably foreseeable that decedent and other persons would be in proximity to the Weyerhaeuser facility, or to the other locations to which the fibers were transported, and inhale airborne asbestos fibers released from Weyerhaeuser's Marshfield operations.

47. Weyerhaeuser Company had a duty to exercise reasonable care for the safety of decedent from asbestos fibers released during Weyerhaeuser's operations of the Marshfield plant which would foreseeably contaminate the air surrounding the plant and other locations to which the fibers were transported.

48. Weyerhaeuser knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

49. Decedent did not know that asbestos or asbestos products were so dangerous or harmful at the time of his exposures.

50. Weyerhaeuser breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

   a. Failed to adequately warn decedent or others of the health hazards of asbestos;

   b. Failed to adequately investigate health effects of asbestos;

   c. Failed to adequately test for air levels of asbestos;

   d. Failed to adequately instruct decedent or others in the use of precautionary measures relating to airborne asbestos fibers;

   e. Used defectively designed asbestos-containing products or asbestos-insulated equipment which did not protect against or prevent the release of asbestos fibers when substitutes were available;

   f. Failed to use proper engineering techniques or methods, or used unsafe techniques or methods, in handling, processing, and disposal of asbestos-containing materials.

   g. Violated agency regulations issued pursuant to the United States Occupational Safety and Health Act, 29 U.S.C. §651, et seq.

    h.    Violated other agency regulations, including without limitation the United States Environmental Protection Agency National Emission Standards for Hazardous Air Pollutants, originally published at 36 Fed. Reg. 3951, March 31, 1971;

    i.    Violated regulations issued by the Wisconsin Industrial Commission, including without limitation General Orders on Dusts, Fumes, Vapors and Gases, Order 2002; And Wis. Adm. Code Ind 12.20;

    j.    Exceeded other air quality standards or guidelines, including without limitation the Threshold Limit Values of the American Conference of Governmental Industrial Hygienists; and

    k.    Failed to take corrective action after being put on notice of the above violations.

51. As a direct and proximate result of the acts and omissions of the premises defendant above, decedent and plaintiff were injured as described above.

## COUNT IV – NUISANCE

52. Plaintiff incorporates by reference all general allegations above and brings this count against defendant Weyerhaeuser.

53. Weyerhaeuser is responsible for the ownership and operation of the door manufacturing plant in Marshfield, Wisconsin during the period of decedent's exposures.

54. Weyerhaeuser, during operations of its Marshfield plant, caused asbestos fibers to be released into and contaminate the public air in, at, and around the plant.

55. Weyerhaeuser Company, during operations of the Marshfield plant, caused asbestos fibers to be released into the public air in other areas more distant from the plant by transport through various means, including without limitation contaminated worker clothing and vehicles hauling asbestos waste materials.

56. Breathing uncontaminated public air is a public right.

57. The release and transport of asbestos fibers as described above caused contamination of housing, vehicles, and other places frequented by decedent which contained public air.

58. Decedent and others inhaled the contaminated public air in the community surrounding the plant, housing, vehicles, and other places frequented by decedent.

59. The inhalation of asbestos fibers from contaminated public air in the community surrounding the plant, housing, vehicles, and other places frequented by decedent is unrelated to any employment relationship with defendant.

60. The inhalation of asbestos fibers is a health hazard.

61. The release of asbestos fibers into the public air interfered with and endangered the use of public places, the right to breath the public air, the use of residences and vehicles, and other activities of the entire community in one or more of the following ways:

   a. Violated agency regulations issued pursuant to the United States Occupational Safety and Health Act, 29 U.S.C. §651, et seq. as set forth in citations issued by OSHA dated December 18, 1973;

   b. Violated other agency regulations, including without limitation the United States Environmental Protection Agency National Emission Standards for Hazardous Air Pollutants, originally published at 36 Fed. Reg. 3951, March 31, 1971;

   c. Violated regulations issued by the Wisconsin Industrial Commission, including without limitation General Orders on Dusts, Fumes, Vapors and Gases, Order 2002; and Wis. Adm. Code Ind 12.20;

   d. Exceeded other air quality standards or guidelines, including without limitation the Threshold Limit Values of the American Conference of Governmental Industrial Hygienists;

   e. Adversely affected the health interests of the community at large; and

   f. Interfered with the public health and safety;

62. As a direct and proximate result of the nuisance, decedent and plaintiff were injured as described above.

**COUNT V – PRODUCTS LIABILITY – STRICT LIABILITY**

63. Plaintiff brings this claim for strict liability against defendants Donaldson and Gardner

Denver.

64. Plaintiff restates and re-alleges the allegations set forth in lines 1-62 above.

65. Defendants were at all relevant times in the business of selling dust control devices.

66. Defendants placed their dust control devices into the stream of commerce with the expectation that they would reach decedent and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendants.

67. Defendants designed, manufactured, and/or sold dust control devices that malfunctioned or otherwise failed to adequately control dust, exposing decedent to asbestos dust at the Marshfield plant and in the surrounding environment.

68. Defendants' dust control devices were defective and unreasonably dangerous at the time they left the possession or control of defendants in one or more of the following ways:

   a. Failed to adequately warn decedent or others of the health hazards of asbestos;

   b. Failed to investigate or test for the effectiveness of controlling asbestos dust;

   c. Failed to instruct decedent, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers;

   d. Defectively designed their dust control devices such that they did not protect against or prevent exposure to asbestos fibers;

   e. Failed to warn decedent or others of the danger of the airborne asbestos fibers released after the products or equipment were installed at the premises;

   f. Failed to specify proper techniques, methods or processes in the installation or removal of asbestos containing products

69. As a direct and proximate result of the acts and omissions of the defendants above, decedent and plaintiff were injured as described above.

## COUNT VI – PRODUCTS LIABILITY – NEGLIGENCE

70. Plaintiff brings this cause of action for negligence against defendants Donaldson and Gardner Denver.

71. Plaintiff re-states and re-alleges the allegations set forth in lines 1-69 above.

72. It was reasonably foreseeable that defendants' dust control devices would be used to control asbestos-containing dust.

73. Defendants had a duty to exercise reasonable care for the safety of decedent and others who used defendants' dust control products to prevent the release of asbestos fibers into their workplace.

74. Defendants knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

75. Each defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

    a.   Failed to adequately warn decedent or others of the health hazards of asbestos;

    b.   Failed to investigate or test for the effectiveness of their products for preventing exposure to asbestos dust;

    c.   Failed to instruct decedent, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers;

    d.   Defectively designed their dust control devices such that they did not protect against or prevent exposure to asbestos fibers;

    e.   Failed to warn decedent or others of the danger of the airborne asbestos fibers released when the ;

76. As a direct and proximate result of the acts and omissions of the defendants above, decedent and plaintiff were injured as described above.

## COUNT VII – PRODUCTS LIABILITY – STRICT LIABILITY

77. Plaintiff brings this claim for strict liability against defendant 3M.

78. Plaintiff re-states and re-alleges the allegations set forth in lines 1-76 above.

79. Defendant was at all relevant times in the business of selling personal protective equipment, including without limitation masks.

80. Defendant placed its personal protective equipment into the stream of commerce with the expectation that they would reach decedent and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendants.

81. Defendant's personal protective equipment reached decedent without substantial or unforeseeable change in the condition in which it was sold.

82. Decedent used defendant's personal protective equipment in the conditions in which they left the possession or control of such defendants.

83. Defendant's personal protective equipment was defective and unreasonably dangerous at the time it left the possession or control of defendants in one or more of the following ways:

   a. Failed to adequately warn decedent or others of the health hazards of asbestos;

   b. Failed to investigate or test for the effectiveness of preventing the breathing of asbestos fibers;

   c. Failed to instruct decedent, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers;

   d. Defectively designed its personal protective equipment such that it did not protect against or prevent exposure to asbestos fibers;

   g. Failed to specify proper techniques, methods or processes in the use of the personal protective equipment.

84. As a direct and proximate result of the acts and omissions of the defendants above, decedent and plaintiff were injured as described above.

## COUNT VIII – PRODUCTS LIABILITY – NEGLIGENCE

85. Plaintiff brings this claim for negligence against defendant 3M.

86. Plaintiff re-states and re-alleges the allegations set forth in lines 1-84 above.

87. It was reasonably foreseeable that defendants' personal protective equipment would be used to prevent exposure to asbestos.

88. Defendant had a duty to exercise reasonable care for the safety of decedent and others who used defendants' personal protective equipment to protect against exposure to asbestos fibers.

89. Defendant knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

90. Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

    a. Failed to adequately warn plaintiff or others of the health hazards of asbestos;

    b. Failed to investigate or test for the effectiveness of their products for preventing exposure to asbestos dust;

    c. Failed to instruct plaintiff, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers;

    d. Defectively designed their personal protective equipment such that it did not protect against or prevent exposure to asbestos fibers;

93. As a direct and proximate result of the acts and omissions of the defendants above, decedent and plaintiff were injured as described above.

## COUNTY IX – NEGLIGENCE

94. Plaintiff brings this cause of action for negligence against defendant Joseph Wendlick.

95. During all or part of decedent's employment at Weyerhaeuser, Wendlick was the industrial

hygienist responsible for the safety procedures and engineering controls at the Marshfield plant.

96. As a result of Wendlick's failure to exercise reasonable care in his capacity as industrial hygienist, decedent and plaintiff were injured as described above.

## **COUNT X – CIVIL CONSPIRACY**

97. Plaintiff brings this cause of action for civil conspiracy against defendant Metropolitan Life Insurance Company.

98. Plaintiff restates and re-alleges the allegations set forth in lines 1 – 96 above.

99. Defendant Metropolitan Life and other unnamed co-conspirators knowingly and willfully combined, agreed, and conspired with each other for the purpose of accomplishing one or more of the following unlawful purposes:

a. Suppressing information about the health hazards of asbestos, including medical and scientific data, from those persons who would be exposed to the asbestos from the products made and sold by the conspirators,

    b. Affirmatively asserting, in a manner not warranted by the information possessed by the conspirators, claims that the conspirators knew were false, namely, that it was safe to work with and in close proximity to asbestos.

100. One or more of the conspirators, including Metropolitan Life, performed the following tortious acts in furtherance of the conspiracy:

    a. Failed to warn about health hazards of asbestos; failed to investigate health hazards of asbestos;

    b. interfered with scientific and medical studies about the health hazards of asbestos; or

    c. failed to instruct about precautionary measures required for protection.

101. As a direct and proximate result of the acts of the conspiracy described above, decedent and plaintiff were injured as described above.

## COUNT XI – WRONGFUL DEATH

102. Plaintiff brings this count individually and on behalf of decedent's next of kin for wrongful death against all defendants and incorporates by reference all allegations 1 - 101 above.

103. Defendants' actions, jointly and severally, as described in the preceding paragraphs, caused the wrongful death of decedent and loss of society and companionship, funeral, medical and other expenses, pecuniary damages and other damages have been suffered by plaintiff and decedent's next of kin.

## COUNT XII – PUNITIVE DAMAGES

104. Defendants acted maliciously, with intentional disregard for the rights of decedent and plaintiff for which plaintiff is entitled to recover punitive damages.

## COUNT XIII   - DECLORATORY JUDGMENT – UNCONSTITUTIONAL

105. In 1995 Wisconsin enacted Act 17 which created restrictions on recoveries by victims of personal injuries.

106. In 2011 Wisconsin enacted Act 2 which created restrictions on recoveries by victims of personal injuries.

107. Plaintiff seeks a declaration that retroactive application of 2005 Act 155 and 2011 Act 2 to limit the recovery in this case is unconstitutional.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

    a.    Judgment against defendants, jointly and severally, for compensatory and general damages.

    b.    Punitive damages in an amount to be determined against each defendant.

    c.    A declaration that 1995 Act 17 and 2011 Act 2 are unconstitutional as applied to

      this case.

d.      Such further legal and equitable relief as the court orders to do justice in this case, including without limitation award of costs and disbursements of this action.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by a jury.

Dated: March 1, 2014

/s/ Michael P. Cascino
Michael P. Cascino
Attorney for plaintiff
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Avenue
Chicago, Illinois 60607
Phone: 312.944.0600
Fax: 312.944.1870
Email1: ecf.cvlo@gmail.com
Email2: mcascino@cvlo.com