IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION

| | | |
|---|---|---|
| Richard Masephol v. Weyerhaeuser Company, et al. | ) | Case No. 3:14-cv-00186 |
| | ) | |
| Milton Boyer and Kathy Boyer v. Weyerhaeuser Company, et al. | ) | Case No. 3:14-cv-00286 |
| | ) | |
| Wesley Sydow and Theresa Sydow v. Weyerhaeuser Company, et al. | ) | Case No. 3:14-cv-00219 |
| | ) | |
| Janet Pecher, Individually and as Special Administrator for the Estate of Urban Pecher, Deceased v. Weyerhaeuser Company, et al. | ) ) | Case No. 3:14-cv-00147 |

DECLARATION OF JAMES S. JOHNSON

I, JAMES S. JOHNSON, Ph.D., CIH, QEP, declare, pursuant to 28 U.S.C. Section 1746, as follows:

1.   I am over the age of twenty-one and am competent to make this declaration. The following is true and correct based on my personal knowledge.

2.   I received a BA in chemistry from Indiana University of Pennsylvania, a Ph.D. in inorganic and organic chemistry from Duquesne University, and a Master of Science in Hygiene from the University of Pittsburgh, Graduate School of Public Health. I am a Certified Industrial Hygienist by the American Board of Industrial Hygiene in comprehensive practice of industrial hygiene and a Qualified Environmental Professional certified by the Institute of Professional Environmental Practice. I am a Certified Industrial Hygienist who for over 40 years has been involved with protecting workers from health hazards using engineering controls and other approaches such as respiratory protection. I am

currently the Chair of the ANSI Z88 Committee on Respiratory Protection, a member of the ANSI Z88.2 Committee on Practices for Respiratory Protection and a member of the NFPA Technical Correlating Committee on Fire and Emergency Services Protective Clothing and Equipment.

3. The time frame for the use of 3M 8710 respirators in the cases listed above is 1973 through 1979. The Marshfield plant stopped using asbestos in the manufacture of its mineral cores in June of 1978, although the potential for non-production use involving asbestos may have extended until 1979.

4. During this time frame of 1973 through 1979, the 3M 8710, TC-21C-132 was approved by NIOSH as a single use respirator for dusts. The limitations of this approval were "Approved for respiratory Protection against pneumoconiosis and fibrosis producing dusts."

5. In ¶ 9 of Dr. Eitzman's affidavit, dated August 3, 2015, he notes that, due to a move of test facilities from Pittsburgh to Morgantown, some aspects of the silica dust procedure changed and that 3M was not required to conduct its own silica dust tests on the 3M 8710 and those tests were similar but not identical to the NIOSH test procedure. I am aware of no correspondence from NIOSH that released 3M from the requirements of its quality control program for 3M 8710 silica dust testing. The only correspondence on the test chamber topic I

am aware of is a NIOSH letter from Robert Schutz dated August 26, 1974 to Donald P. Wilmes that noted:

> It appears that the relative humidity in the test chamber and incoming air is more critical than we originally thought. Although the test requirements specify 20 to 80 percent we now know that excursions of relative humidity outside the 50 +/- 10 percent range produce erratic leakages.
>
> Therefore, we suggest that interested manufacturers install the necessary equipment for controlling the relative humidity of their silica dist chamber to 50 +/_ 10 percent.
>
> When this is successfully accomplished, we will be pleased to work with you in cross checking filter leakage test results.

Declaration of Counsel, Exhibit 53 (1974-08-26 Ltr fr NIOSH to 3M). These actions by NIOSH addressed any issues resulting from the chamber move, and 3M should have corrected its silica dust test procedure or continued the dialogue with NIOSH until the issue was corrected.

On September 6, 1974, when NIOSH accepted the DOP test defined by 3M test results as a substitute method for silica dust testing, it was for 3M 8710 production only. NIOSH also emphasized the requirements to use silica dust as described in 30CFR Part § 11 if there is any conflict in the two methods. The silica dust test will be the reference method. Declaration of Counsel, Exhibit 20 (1974-09-06 Ltr fr NIOSH to 3M).

6. In ¶ 10 of Dr. Eitzman's affidavit, dated August 3, 2015, he continues the topic of silica dust procedures being different.  As noted in ¶ 5 above, the observed difference between the NIOSH test chamber and manufactures test chambers was addressed by NIOSH; and manufactures were responsible to meet the required values to pass the test.  There is no NIOSH correspondence that I am aware of that excused 3M from meeting these performance requirements for the 3M 8710 outlined in its quality assurance program.  Internal tests clearly showed that the 3M 8710 was not meeting these requirements and if reported to NIOSH would have resulted in the removal of the 3M 8710 approval.

7. In ¶ 11 of Dr. Eitzman's affidavit, dated August 3, 2015, he notes that breathing resistance is a comfort issue.  The statement is in direct contrast with the classification of the inhalation and exhalation test result values in the 3M 8710 Quality Control Manual for the 3M 8710 and internal 3M correspondence addressing deviations from these inhalation and exhalation values.  In the 3M quality control manual approved by NIOSH, deviations from these required test results were designated as Major A defects.  A Major A defect is defined by NIOSH 30 C.F.R. §11 as:

> A defect, other than critical, that is likely to result in failure to the degree that the respirator does not provide any respiratory protection or a defect that reduces protection and is not detectable by the user.

4

Attached to Declaration of Counsel, Exhibit 1 (30 C.F.R. §11); Exhibit 49, at 3M 002500-2501; 3M 136829-136832 (3M Quality Control manual).  A Major A defect is more than a comfort issue for the 3M 8710 respirator as noted by Dr. Eitzman.  It was a major performance issue for maintaining certification of the 3M 8710 respirator.

8.     The selection of the 3M 8710 respirator by Mr. Wendlick of Weyerhaeuser Company was based on the NIOSH certification and 3M's representations about the performance of the respirator.  Clearly there were alternative designs, which met NIOSH standards, to choose from that were outlined in an internal memo from J.D. Wedlick to Wes Stone on March 28, 1973. In this memo, he listed 12 other commercially available respirators that were acceptable alternatives.  Attached to the Declaration of Counsel, Exhibit 54 (1973-03-28 memo).

9.     In ¶ 15 of Mr. Weber's affidavit, dated August 3, 2015, he claims results from Edwin Hyatt at Los Alamos National Laboratory state "single use respirators have been tested against asbestos and cotton dusts and could be assigned a PF (protection factor) of 10 for those particulates.  A review of Mr. Hyatt's 1976 publication "Respirator Protection Factors" identified the 3M 8710 as a single use dust respirator with only 25% of 16 man test panel obtaining a protection factor of greater than 10. In this publication Mr. Hyatt assigns the

5

single-use dust respirators a protection factor of 5. Attached to the Declaration of Counsel, Exhibit 55 (1976-01 Los Alamos paper).

10. In ¶ 17 of Mr. Weber's report, dated August 3, 2015, he refers to the 3M 8710 respirator as a half mask respirator, but this is incorrect because it was a new type of respirator that was referred to in the NIOSH certification process as a single-use dust respirator.

11. In ¶ 19 of Mr. Weber's report, dated August 3, 2015, he notes that the NIOSH testing schedule using silica dust is an accurate predictor of the performance of the 3M 8710 against pneumoconiosis and fibrosis producing dusts including asbestos. A review of the internal correspondence during the time period, noted in ¶3 above, clearly shows the 3M 8710 single-use dust respirator was not meeting the NIOSH testing schedule. An example of the problem is presented in 3M Interoffice Correspondence from L.K. Stump to Don Wilmes on September 28, 1976. Attached to the Declaration of Counsel, Exhibit 30 (1976-09-28 memo).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED: Pleasanton, California, August 31, 2015.

_____
JAMES S. JOHNSON, Ph.D., CIH, QEP