IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JANET PECHER, *Individually and as Special*
*Administrator on behalf of the Estate of Urban Pecher*,

OPINION AND ORDER

Plaintiff,

v.

14-cv-147-wmc

WEYERHAEUSER COMPANY,

Defendant.

---

The first of three related asbestos cases is set for trial March 14, 2016.  In advance of the final pretrial conference on March 8, 2016, the court issues the following rulings on the parties' respective motions *in limine* (dkt. ##432, 433, 488), as well as a motion by plaintiff to claw back an admission made during the course of summary judgment (dkt. #454), and two other recently-filed motions  (dkt. ##473, 474).

OPINION

## I.  Plaintiff's Motions

### A.  "Omnibus" Motion *in Limine* (dkt. #432)

Plaintiff filed two motions *in limine*, the first is titled an "omnibus motion" and lists twenty items plaintiff seeks to exclude from evidence and argument.  As defendant points out, plaintiff's motion is deficient for the most part.  Still, for most of the items on the list, defendant does not object, because it does not intend to offer such evidence or make such argument.  For purposes of clarity at trial, therefore, the court will address each item as a distinct, sub-motion, grouping related items where appropriate.

###### i. Testimony about Law Firms

Plaintiff seeks to exclude evidence and argument about (#1) how plaintiff's lawyers are paid for their services; (#2) the time or circumstances under which plaintiff employed an attorney; (#3) plaintiff's law firm Cascino Vaughn Law Officers and Motley Rice LLC's involvement in other asbestos-related lawsuits; and (#6) asbestos lawsuits being "lawyer made." Defendant does not object to these requests and further represents that the parties have agreed that neither side will introduce this type of evidence or argument. These sub-motions are GRANTED AS UNOPPOSED.[1]

###### ii. Court's prior rulings

Plaintiff seeks to exclude any reference to other defendants who were granted summary judgment in this case. (#4.) As defendant points out, the court has not granted summary judgment to any other defendants, and therefore this motion is DENIED AS MOOT. Plaintiff also seeks to exclude any evidence or argument that any expert called by plaintiff has been barred or the testimony has been limited by this court or any other court. (#8.) Defendant represents that the parties have agreed not to raise the limitation or exclusion of expert testimony. Accordingly, this sub-motion is GRANTED AS UNOPPOSED.

---

[1] As for sub-motion No. 3, defendant further requests that the court bar plaintiff from presenting evidence or argument of other individuals bringing asbestos-related lawsuits against Weyerhaeuser -- the same request made in defendant's own motions *in limine*. The court will address this request in the decision below on Weyerhaeuser's motions *in limine*.

### iii.    Analogies

Plaintiff seeks an order excluding "[a]ny argument inaccurately analogizing the burden of proof to a football game or stating that the Plaintiff has to 'get past the 50 yard line.'"  (Pl.'s Omnibus Mot. (dkt. #432) #5.)   In response, defendant represents that it does not intend to offer this analogy, but that it will offer proper analogies or characterizations to describe the preponderance of the evidence standard to the jury. The explicit request made in this sub-motion is GRANTED AS UNOPPOSED without ruling on the propriety of other, unspecified analogies, except to caution *both* sides generally that the court will not only err on the side of excluding any attempt to redefine or alter its legal instructions to the jury, but likely admonish counsel for attempting to do so.

### iv.    Witnesses

Plaintiff seeks to exclude any reference, other than during jury selection, to "names of persons as being potential witnesses or that they were identified in interrogatory answers or other discovery documents as potential witnesses."  (Pl.'s Omnibus Mot. (dkt. #432) #7.)   Defendant does not oppose this motion so long as plaintiff is similarly barred from making references about witnesses Weyerhaeuser could have called.   Accordingly, this sub-motion is GRANTED AS UNOPPOSED, and plaintiff is bound by the same exclusion.

###### v.   Screening for non-malignant asbestos diseases

Next, plaintiff seeks an order excluding "[a]ny comment, inference, evidence, testimony, document or questioning concerning screening for non-malignant asbestos diseases or individuals employed to conduct such screenings."  (Pl.'s Omnibus Mot. (dkt. #432) #9.)  In support, plaintiff simply asserts that these matters "are irrelevant and prejudicial pursuant to Fed. R. Evid. 402."  (*Id.*)  Defendant opposes this request and reasonably points out that "evidence of Dr. Andersons' involvement with thousands of such screenings under Cascino Vaughan's employ is certainly relevant for his cross-examination and credibility as an expert and a paid witness."  (Def.'s Opp'n (dkt. #466) p.5.)  The court agrees, especially since plaintiff offered *no* explanation as to why this evidence is irrelevant or unduly prejudicial.  Accordingly, this sub-motion is DENIED.

###### vi.   Plaintiff's habits and other personal information

Plaintiff requests that the court bar any evidence of "Plaintiff's personal habits, drinking habits, social habits or any other type of personal information designed to embarrass, humiliate or prejudice Plaintiff."  (Pl.'s Omnibus Mot. (dkt. #432) #10.)  In so moving, plaintiff appears particularly concerned about introducing evidence reflecting plaintiff's smoking habits in light of the fact there is no allegation that such habits contributed to his mesothelioma.  Once again, plaintiff's only "support" for this sub-motion is an assertion that this evidence would be "irrelevant and prejudicial" under Rule 402.  In response, defendant contends that it will not offer evidence of any of Mr. Pecher's habits to embarrass Mrs. Pecher.  Defendant also offers that there is no evidence of a smoking habit.  Still, defendant maintains that other evidence "of personal and social

habits that impacted Mr. Pecher's health, quality of life or life expectancy is relevant to claims for compensatory damages."  (Def.'s Opp'n (dkt. #466) p.5.)  The court again agrees with defendant.  Accordingly, this sub-motion is GRANTED IN PART AND DENIED IN PART as follows:  Any evidence of Mr. Pecher's personal and social habits are excluded from the liability phase, but may be offered during damages; and the request to exclude any evidence of a smoking habit is granted as unopposed.

> ### vii.    "Threshold limit values"

In this request, plaintiff seeks to exclude evidence or argument "[t]hat the 'threshold limit values' for asbestos exposure or levels stated in Wisconsin Industrial Commission regulations are 'safe' levels of exposure which could prevent mesothelioma." (Pl.'s Omnibus Mot. (dkt. #432) #11.)  In support, plaintiff contends that the OSHA regulations in 1972 did not take into account prevention of mesothelioma, and therefore, this evidence should be excluded.  In response, defendant represents that it does not intend to offer this evidence in support of an argument that there is a safe level of asbestos exposure for purposes of preventing mesothelioma.  Rather, defendant contends that this evidence is relevant to "whether Weyerhaeuser knew or should have known that any alleged emission could or would cause injury."  (Def.'s Opp'n (dkt. #466) p.6.)  The court agrees this evidence *is* relevant to knowledge, which is certainly relevant to plaintiff's claim of intentional public nuisance.  Weyerhaeuser, however, may neither offer this evidence to prove nor to argue that there is a safe level of asbestos emission for purposes of preventing mesothelioma.  Accordingly, this sub-motion is GRANTED IN PART AS UNOPPOSED AND DENIED IN PART.

### viii.    Settlements, other payments

Plaintiff seeks an order excluding evidence and argument about (#12) settlement amounts from other parties or nonparties; (#13) plaintiff's claims in bankruptcy trusts; and (#14) receipt of social security, insurance benefits, and life insurance proceeds.

On sub-motion No. 12, plaintiff relies on Federal Rule of Evidence 408, which excludes evidence of a settlement offer or acceptance of that offer to compromise "the claim" or any conduct or statement made during compromise negotiations about "the claim." Fed. R. Evid. 408(a).  In its opposition, defendant eschews an intent to introduce evidence of "the *substance* of settlement discussions or the *amounts* of any such settlements."  (Def.'s Opp'n (dkt. #466) p.6.)  Instead, defendant seeks to introduce evidence "(1) that Plaintiff previously alleged another party was responsible for Mr. Pecher's exposure to asbestos or (2) that the claim was settled with that particular party or non-party defendant."  (*Id.* at p.7.)  Defendant maintains that such evidence is relevant to counteract any "downplaying the fault of those now-settled parties, potentially raising the allocation of fault for Weyerhaeuser."  (*Id.* (citing *Hareng v. Blanke*, 279 N.W.2d 437 (Wis. 1979)).)

Defendant's position is at least consistent with Rule 408 to the extent it provides that the court "may admit [evidence of settlement] for another purposes, such as proving a witnesses' bias or prejudice." Fed. R. Evid. 408(b).  With that framework in mind, the court will RESERVE ruling on this sub-motion pending reference to specific evidence and/or argument defendant intends to offer.  The parties should be prepared to address the relevance of this evidence further at the final pretrial conference.

As for sub-motion No. 13, plaintiff seeks to exclude evidence that plaintiff submitted claims to funds in several bankruptcy trusts on the basis that the evidence is not probative of any fact or is unduly prejudicial even if probative.  Plaintiff also argues that the claim submissions contain affidavits of co-workers about asbestos exposure that are hearsay and should be excluded.[2]  Defendant opposes this motion, arguing that such evidence is expressly admissible under state law.  Wis. Stat. § 802.025(3)(a) ("Trust claims materials and trust governance documents are admissible in evidence.").  Putting aside the outstanding question of whether a federal court would look to state law to determine the admissibility of evidence, defendant also argues that such evidence is relevant because it has a tendency to show that plaintiff "made claims that *another entity is responsible for Mr. Pecher's development of mesothelioma.*"  (Def.'s Opp'n (dkt. #466) p.9.)  The court agrees with defendant that at least some of this evidence may be relevant to both causation -- which will be determined during the liability stage of trial -- and damages.  Accordingly, the court will also RESERVE on this sub-motion, with the caveat that non-party affidavits attached to the claims submissions will be EXCLUDED as hearsay unless offered for truth of the matter asserted.  The parties should again be prepared to address whether any relevance of this evidence outweighs possible prejudice to plaintiff.

Finally, in sub-motion No. 14, plaintiff raises a third related request, seeking exclusion of any evidence of "benefits of any kind from a collateral source," namely

---

[2] Plaintiff acknowledges that Pecher's *own* affidavit constitutes a statement of a party opponent and is, therefore, admissible under Federal Rule of Evidence 801(d)(2).

"[b]enefits from hospitalization, medical or other collateral insurance coverage; [s]ocial security and pensions, whether a union pension or otherwise; and [l]ife insurance proceeds." (Pl.'s Omnibus Mot. (dkt. #432) #14.)   Plaintiff contends that this evidence is properly excluded under the collateral source rule.   Defendant does not object to this request, except if it covers excluding evidence of the workers' compensation system generally or the fact that Pecher filed a workers' compensation claim.   Plaintiff filed her own separate motion on the workers' compensation claim, which the court addresses below.   As for the explicit evidence identified in this sub-motion, it is GRANTED AS UNOPPOSED.

### ix.    Effect of claim on insurance rates

Plaintiff seeks an order excluding any evidence or argument about the "effect or result of a claim, suit or judgment upon the insurance rates or charges" with respect to both plaintiff and defendants.   (Pl.'s Omnibus Mot. (dkt. #432) #15.)   Defendant does not oppose this sub-motion.   Accordingly, it, too, is GRANTED AS UNOPPOSED.

### x.    Weyerhaeuser's knowledge (or lack thereof)

In sub-motion No. 16, plaintiff seeks an order excluding Weyerhaeuser from arguing that "the absence of records" showing its "knowledge of the dangers of asbestos" or "knowledge of the release of asbestos into the Marshfield community from the Marshfield plant" is proof that Weyerhaeuser did not know.   (Pl.'s Omnibus Mot. (dkt. #432) #16.)   Plaintiff contends that this evidence (really, the lack of evidence) is inadmissible because defendant's records are incomplete, and therefore defendant cannot

lay the necessary foundation for such evidence to be admissible under Federal Rule of Evidence 803(7).   In its response, defendant argues that the "absence of contemporaneous documents discussing the dangers of alleged community emissions is relevant" to Weyerhaeuser's knowledge of the dangers of non-occupational exposures. (Def.'s Opp'n (dkt. #466) 12.)

The court agrees with defendant that an absence of evidence can be relevant. Plaintiff's simple assertion that the records are incomplete is insufficient to prevent Weyerhaeuser from pointing to the apparent lack of proof of knowledge.   Of course, plaintiff is free to challenge defendant on its record-keeping practices, and to offer this as an explanation for the lack of direct evidence of knowledge.   Without more from plaintiff, however, the court sees no basis to exclude Weyerhaeuser from arguing the possible significance of a lack of records kept in the normal course of business on the dangers of non-occupational asbestos exposures.   Accordingly, this motion is DENIED.

### xi.    United States government's treatment of asbestos

Finally, plaintiff submits four related requests excluding evidence and argument of the United States government's treatment of asbestos.   The first two can be considered together.   Plaintiff seeks orders excluding argument that:  (#17) "the use of asbestos by the U.S. government without warnings is evidence that private entities need not warn or instruct about precautionary matters;" and (#18) "the United States stockpiled evidence."  (Pl.'s Omnibus Mot. (dkt. #432) ##17, 18.)   Defendant does not oppose these requests, other than to note that plaintiff should be bound by the same order. Subject to that caveat, therefore, these motions are GRANTED AS UNOPPOSED.

Plaintiff also seeks an order excluding any argument that "asbestos insulation products 'won the war' or any reference to such products being necessary during World War II or any other war." (Pl.'s Omnibus Mot. (dkt. #432) #19.) Defendant does not object to plaintiff's request to exclude any "won the war" reference, but does oppose the motion to extent that plaintiff seeks to exclude all evidence of the use of asbestos in World War II or subsequent wars on that basis that this evidence is relevant to plaintiff's allegation that Weyerhaeuser needlessly continued to use asbestos despite knowledge of its dangers. On this, the court agrees with plaintiff. Defending the use of asbestos in the manufacture of household *doors* on the grounds that the government continued to use asbestos in waging war is a classic case of an unreasonable comparison. Indeed, one could hardly come up with a less apt comparison than cost-benefit analysis for use of asbestos to manufacture a household product and for use in waging war! Accordingly, plaintiff's motion is GRANTED.

Finally, plaintiff seeks on order excluding evidence or argument that "the U.S. Government or any other governmental (state or municipal) entity in any way approved of, required or specified the use of asbestos products." (Pl.'s Omnibus Mot. (dkt. #432) #20.) In support, plaintiff cites to a Ninth Circuit case for the proposition that such information "cannot provide a defense upon which Defendants may rely." (*Id.* (citing *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992).) As defendant explains in response, the holding in that case is not applicable here, because a similar "government contractor defense" is not at issue. (Def.'s Opp'n (dkt. #466) pp.12-13.) To the contrary, evidence of government specifications, including building codes, is relevant to

10

whether and what Weyerhaeuser knew about the dangers of asbestos exposure. Accordingly, this motion is DENIED unless plaintiff can demonstrate the comparison is inapt.

**B.  Motion *in Limine* on Workers' Compensation (dkt. #433)**

Plaintiff also seeks to exclude any evidence or argument about plaintiff applying for or receiving workers' compensation benefits.  Plaintiff contends that this evidence is irrelevant and unduly prejudicial, as well as barred by Wisconsin's collateral source rule. Specifically, plaintiff argues that the issue for the jury will be the amount of damages caused by defendant, making the amount of other compensation irrelevant.  In its response, defendant does not oppose the motion to the extent that plaintiff seeks to exclude the *amount* of other benefits available to Pecher.  Defendant, however, seeks to introduce evidence and argument generally about the workers' compensation system for several purposes, including (1) to explain that the occupational exposure is not the focus of plaintiff's claims and cannot form the basis of a damages award; (2) to place plaintiff's motive for bringing a nuisance claim in the context of the workers' compensation act's exclusivity provision; and (3) to argue that the cause of Pecher's injuries was his occupational exposures.

The court agrees with defendant that the workers' compensation system -- specifically its availability to cover occupational injuries -- may be relevant to the jury's determination of damages.  Therefore, the court is inclined to allow evidence and argument as to the existence of this system and its exclusivity provision in the damages phase.  The court, however, is disinclined to allow this evidence and argument in the

liability phase, unless either side opens the door, except to explain that any liability to plaintiff for *work* exposure has been addressed in a separate proceeding.

Of course, this ruling does not prohibit defendant from describing the occupational exposures and arguing that those alone are the cause (or at least the only substantial cause) of plaintiff's injury, while any non-occupational exposure was not a substantial contributing cause. This argument, however, need not involve an explanation of the workers' compensation system.

Accordingly, this motion is GRANTED IN PART, DENIED IN PART AND RESERVED IN PART as follows: evidence and argument concerning the workers' compensation system generally or reference to plaintiff's specific application or any receipt of benefits is excluded from the liability phase; any general evidence and argument is admissible during the damages phase of the trial; and the court reserves as to the admissibility of any specific evidence or argument as to plaintiff's specific application or benefits.

### C.  Motion to Amend Response (dkt. #454)

In an unusual motion, plaintiff seeks to "amend" its prior response to a proposed finding of fact submitted by defendant in support of its motion for summary judgment, based on the testimony of one of its experts during the *Daubert* hearing. At summary judgment, defendant submitted the following proposed finding:

> Plaintiffs' experts, including Dr. Anderson and Dr. Abraham, testified that the in-plant exposures were the "heaviest" and sufficient alone to have caused the asbestos-related disease.

(Def.'s PFOFs (dkt. #200) ¶ 144 (citing deposition testimony).)   In her response to defendant's proposed findings of facts, plaintiff responded "admit."   (Pl.'s Resp. to Def.'s PFOFs (dkt. #318) ¶ 144.)

At the December 3, 2015, hearing on defendant's motion to strike Dr. Anderson's and other experts' testimony, Dr. Anderson testified as follows:

> Q    My question is for Mr. Boyer, if you were to -- let's say the occupational exposure is blue, the household exposure is red and the exposure from living in the community is yellow. If you were to eliminate one of those exposures from his life, could you still say that it would be more likely or not he would have developed mesothelioma when he did?
>
> A    Yes.
>
> Q    What would you --
>
> A    Oh, no.  It might have -- now when he did --
>
> Q    Yes.
>
> A    -- would have probably changed.  It might well have changed, I can't tell you how much.
>
> Q    And he might not have gotten the disease at all.
>
> A    He might not have gotten the disease because the risk is somewhat lower if you had lower total exposure.
>
> Q    Once someone has the disease, is there any way scientifically that you know of that you can say okay, I can back out some significant component of his exposure and still say it was -- that he would have developed the disease?
>
> A    No.
>
> Q    Do you need a quantitative measurement or estimate of any subcomponent exposure as long as they are the nature and type of exposure that has been shown in literature to cause mesothelioma?
>
> A    No.

13

(12/3/15 Hearing Tr. (dkt. #412) 113-14.)   Plaintiff contends that based on this testimony there is "an actual dispute as to whether Plaintiffs' experts have 'testified that the in-plant exposures were the 'heaviest' and **sufficient alone** to have caused the asbestos-related disease." (Pl.'s Br. (dkt. #455) 2.)

As an initial matter, a plaintiff can walk back at trial an admission made for purposes of summary judgment, although typically a party would expressly admit "for purposes of summary judgment only." Arguably, a party should not be able to walk back so-called "admissions" made in opposition to a *Daubert* motion, at least as far as being estopped from backtracking on a party's material representations of fact to the court. Of course, if defendant really wanted to bind plaintiff, that is what requests for admissions under Fed. R. Civ. P. 36 are intended to accomplish.

But all of that is irrelevant, since the court does not read Anderson's testimony before the court to conflict directly with his earlier testimony that the occupational exposures suffered by Pecher were sufficient alone to cause his mesothelioma. Anderson's hearing testimony that there can be multiple sources of exposure and that no one source can be said to have been the *sole* cause is not to say that any one source was insufficient by itself to have caused mesothelioma. Indeed, Anderson appears to have conceded to his testimony that Pecher's (and the other plaintiff's) substantial occupational exposures over time were "sufficient alone to have caused the asbestos-related disease," and the court is of the view that he would be hard-pressed to say

14

anything else credibly at trial,[3] but plaintiff remains free to explore this topic at trial with Dr. Anderson, and the jury can assess whether his reaction to a hypothetical situation with three sources of unknown amounts is different from his prior deposition testimony -- and, if so, whether this later testimony is credible.   Accordingly, this motion is DENIED as moot.

### D. Motions Regarding Testimony by Witnesses (dkt. ##473, 470)

Plaintiff filed two other motions concerning witness testimony.   In the first motion, plaintiff seeks to strike deposition designations by defendant.   (Dkt. #473.) Plaintiff designated certain portions of the deposition of Verna Fohrman taken on June 15, 2011, in the *In re Asbestos Products Liability Litigation (No. VI)*, E.D. Pa. ("MDL 875"). (Pl.'s Depo. Designations (dkt. #430) p.4.)   In its objections and counter-designations, defendant designated portions of Fohrman's deposition taken on May 28, 1998, in the *Stini v. Owens Corning*, No. 95-CV-325 (Wood Cnty. Cir. Ct.).   (Def.'s Objs. & Counter-Designations (dkt. #470) p.7; 5/28/98 Fohrman Depo. (dkt. #472).)   In its filing, defendant explained that the counter-designations were necessary for the sake of completeness.   (*Id.*)   Relying on this court's earlier order on defendant's motion to strike certain deposition testimony from other cases (2/19/16 Op. & Order (dkt. #441) 8-11), plaintiff maintains, however, that she was not a party to the prior lawsuit and, therefore, the testimony does not fall within the limited exception to hearsay under Federal Rule of Evidence 804(b)(1).   While the court finds plaintiff's argument persuasive, particularly

---

[3] Indeed, Dr. Anderson previously opined that virtually *any* exposure to asbestos from any source is sufficient alone to cause mesothelioma.

since reference to testimony from an entirely *different* deposition is not normally a basis for a "completeness" objection, the court will RESERVE ruling until defendant has a chance to respond at the final pretrial conference.

Plaintiff also filed a motion to take so-called "preservation depositions" in lieu of trial testimony for two witnesses who are unavailable to appear in person.  (Dkt. #474.) Jim Gallatin is the former superintendent of the Weyerhaeuser plant, and plaintiff represents that he cannot travel to Madison because he is the primary caretaker for his mentally-limited son.   Plaintiff would also like to take a videotaped deposition to play at trial of Everett Burt, who plaintiff represents, recently advised that his doctor will not permit him to travel to Madison due to recent heart attacks.   The court is strongly disinclined to order the taking of depositions in the week leading up to trial, unless both sides request it, but will RESERVE ruling on this motion, pending discussion with the parties at the final pretrial conference.  In the interim, plaintiff's counsel should arrange for either or both of these witnesses to appear live via videoconference for testimony at trial.

## II. Defendant's Motions *in Limine* (dkt. #448)

Like plaintiff, defendant similarly presents a long list – 27! -- requests to exclude evidence and argument, but, unlike plaintiff, defendant presented developed arguments in a brief filed with the motion.  The court will address each motion in turn, again grouping motions where appropriate.

**A.  Duplicative Motions**

Several of defendant's motions overlap with those submitted by plaintiff.  For the same reasons as explained above, the following motions are GRANTED AS UNOPPOSED:   #21 (seeking an order barring statements, references, or evidence regarding liability insurance); #24 (seeking an order excluding any reference or comment by counsel regarding the amount of money or time spent by Weyerhaeuser in the defense of this matter); #25 (seeking an order barring any reference to defense counsel as "asbestos defense lawyers"); and #27 (seeking an order excluding any evidence of the amount of benefits available under Wisconsin Workers' Compensation Act).

**B.  Other Lawsuits**

Defendant seeks an order excluding other personal injury actions involving Weyerhaeuser based on alleged exposure to asbestos.  (#1.)  Plaintiff opposes the motion, arguing that previous lawsuits or claims for workers' compensation are relevant because they tend to show defendant knew or had reason to know of health hazards associated with asbestos exposure.  To the extent the lawsuits or other claims occurred during the period of time when Weyerhaeuser was using asbestos in the manufacturing of fireproof doors (i.e., pre-1978), the court agrees with plaintiff,[4] although it is not at all clear from plaintiff's submission that it has such evidence.  If plaintiff's evidence of other

_____

[4] Plaintiff indicates that lawsuits against *other* manufacturers are also relevant to Weyerhaeuser's knowledge of the danger of asbestos exposure.  Assuming that these lawsuits occurred before 1978, such evidence may be relevant, but plaintiff will need to make a satisfactory proffer to the court outside the jury's presence regarding the specific claims at issue in other lawsuits, whether those claims are sufficiently similar to the claimed non-occupational exposures at issue in this case, and grounds to believe that Weyerhaeuser knew or should have known of these lawsuits. Otherwise, evidence of other lawsuits will be excluded.

lawsuits or claims against Weyerhaeuser post-date the relevant period of exposure at issue in this lawsuit, then Weyerhaeuser's subsequent knowledge is not material to plaintiff's claims. Accordingly, the motion is GRANTED as to *any* post-1978 lawsuit or claim.

### C. "Dust"

Next, defendant seeks to exclude testimony from fact witnesses discussing "dust." (#2.) This motion is similar to a challenge raised in defendant's *Daubert* motion concerning plaintiff's expert Frank Parker's reliance on anecdotal evidence of dust. As the court acknowledged in its opinion on the *Daubert* motion and on defendant's motion for summary judgment, there is conflicting evidence from (1) witnesses as to the color of the dust (black or some other color than off-white), (2) the fact that dust was present both before and after Weyerhaeuser's use of asbestos, and (3) the fact that there were other sources of "dust" at the Weyerhaeuser plant and in the community. (2/19/16 Op. & Order (dkt. #441) 25-26, 37-39.) All of this is proper fodder for cross-examination, but does not constitute a basis for striking the testimony of fact witnesses or reliance by experts on that testimony in forming opinions. This motion is, therefore, DENIED.

### D. Plaintiff's Take Home Exposure

Defendant seeks an order precluding plaintiff from basing her claim of non-occupational exposure on asbestos fibers brought home on his work clothes. As the court explained in its prior opinion and order on defendant's motion to dismiss, such a claim is barred by the exclusivity provision in Wisconsin's Workers' Compensation Act, because those fibers "still 'arose out of his employment.'" (8/22/14 Op. & Order (dkt. #64)

(citing *Boyer v. Weyerhaeuser*, No. 14-cv-286, slip op. *9 (W.D. Wis. Aug. 22, 2014) (dkt. #94)).)  While acknowledging this ruling, plaintiff contends that evidence of fibers on plaintiff's work clothes is still relevant to (1) Anderson's testimony about cumulative lifetime asbestos exposure and (2) Weyerhaeuser's knowledge "by 1960, or by 1965 at the latest, that both domestic and neighborhood exposure to asbestos can cause mesothelioma."  (Pl.'s Opp'n (dkt. #461) pp.5-6.)

As for plaintiff's first basis for allowing testimony of exposure from asbestos on work clothes, the court will not preclude Dr. Anderson's testimony about cumulative exposure, but the jury will be instructed that the non-occupational exposure does *not* include any asbestos fibers Pecher brought home on his clothing, since this, too, was the subject of a separate proceeding.  As for plaintiff's second basis for allowing this evidence, plaintiff utterly fails to provide any explanation as to why *Pecher's* take home exposure demonstrates Weyerhaeuser's knowledge of the risk of asbestos exposure.  Absent such an explanation, the court will not allow evidence or argument based on Pecher's home exposure from his own work clothes.  Accordingly, the motion is GRANTED IN PART AND DENIED IN PART.  The motion is denied as to Dr. Anderson's general testimony about cumulative exposure for context purposes, but granted in all other respects.

### E.  D. B. Allen Report

In a prior opinion and order, the court addressed the admissibility of a 1975 report by D. B. Allen. (#4.)  The court concluded that the document was not properly authenticated for purposes of considering it at summary judgment, though reserved on a ruling as to its admissibility at trial pending Allen's deposition and any testimony on his

part that may indicate the document falls within an exception to the hearsay rule. (2/19/216 Op. & Order (dkt. #441) 4-8.)  In its motion and in plaintiff's response, the parties raise several arguments with respect to whether:  (1) the document was properly authenticated by D. B. Allen in a 2015 deposition in a separate lawsuit; and (2) it falls under an exception to hearsay rule.  The court opts to RESERVE on this motion pending argument at the final pretrial conference.

### F. Asbestos Exposure

In addition to the motions described above, defendant seeks to exclude evidence of community exposure for the years plaintiff did not live in Marshfield (#5); evidence concerning conditions at or around landfills (#6); and hearsay testimony regarding complaints in the community (#7).  On the first motion, plaintiff opposes it to the extent that activities within the 1.25 mile radius of the plant for the years plaintiff did not live in Marshfield are still relevant to Dr. Anderson's testimony about cumulative exposure.   Though these activities, standing alone, would not support Dr. Anderson's and the other's experts' opinions that Pecher had substantial non-occupational exposures and that these non-occupational exposures were a significant factor contributing to his mesothelioma, plaintiff may make a proffer at the final pretrial conference as to the arguable relevance of this evidence for a more limited purpose.  Except to that extent, however, while the court will also RESERVE on motion #5 as to a further proffer, absent the court's satisfaction, this evidence will not be offered at trial.

As for the motion concerning evidence of the conditions of landfills, plaintiff contends that the motion is premature because the experts will be able to testify "to the

significance of the dust emitted from trucks en route from the plant to Pecher's residence." (Pl.'s Opp'n (dkt. #461) p.11.) Plaintiff, however, failed to respond to defendant's motion concerning the landfills *themselves*. Accordingly, this motion is GRANTED as to the condition of the landfills, but DENIED as to evidence that trucks from Weyerhaeuser carrying asbestos to the landfill were uncovered or otherwise exposed to the air within 1.25 miles of the plant or otherwise near the Pecher home.

Next, defendant seeks an order excluding testimony from witnesses of complaints regarding dust in the community. In response, plaintiff contends that this testimony is not offered for the truth of the matter -- that there was dust in the community -- but rather that Weyerhaeuser received and was aware of these complaints. The problem with plaintiff's argument is that there is no indication that the testimony in dispute (namely, that of Verna Fohrman) can be tied to *Weyerhaeuser* or otherwise show *Weyerhaeuser's* knowledge of these complaints -- as opposed to Fohrman's knowledge of complaints. Absent some further proffer for finding that the testimony either falls outside of the confines of hearsay or falls within an exception, this motion is GRANTED.

### G. Mr. Pecher's Death

Defendant brings two motions concerning Mr. Pecher's death. In the first motion, defendant seeks to exclude his death certificate as unduly prejudicial under Federal Rule of Civil Procedure 403 (#8), and in the second motion, defendant seeks to exclude autopsy photographs (#9). In her response, plaintiff does not oppose either, and specifically notes with regard to the first, that the parties have stipulated to advise the

jury that the diagnosis of mesothelioma is correct.   These motions are, therefore, GRANTED AS UNOPPOSED.

### H. Information About Other Weyerhaeuser Locations

Defendant seeks to exclude evidence regarding any other Weyerhaeuser facility or location on the basis that this claim is limited to the Marshfield plant.  (#9.)  While the court credits defendant's argument, as plaintiff points out in her response, to the extent evidence from other locations or facilities demonstrates Weyerhaeuser's knowledge of the dangers of asbestos exposure, the evidence is relevant.   Accordingly, this motion is DENIED as to evidence specific to Weyerhaeuser's knowledge of dangers from asbestos exposure before or during the period of plaintiff's relevant, non-occupational exposure, but GRANTED in all other respects.

### I.   Elwood Schiller Deposition

Defendant seeks to exclude the deposition of Elswood Schiller. (#10.)  The court is perplexed by this motion since it already granted a motion to exclude this deposition in a prior opinion and order.  (2/19/16 Op. & Order (dkt. #441) 10-11.)  Accordingly, this motion is DENIED AS MOOT.

### J.  Warnings Placed on Fireproof Doors

Next, defendant seeks to exclude under Federal Rule of Evidence 402, warnings or labels placed on fireproof doors that warned end-users that the doors contained asbestos. (#11.)  Plaintiff argues that this evidence is relevant to Weyerhaeuser's *knowledge* of the hazards of asbestos exposure.  The court agrees with plaintiff that such evidence could be

relevant, again provided the warnings or labels were present during the relevant time period.  Accordingly, this motion is GRANTED, except for warnings or labels that were placed on doors during or before 1978.

### K. Expert Testimony

Defendant brings three motions concerning expert testimony.  First, defendant seeks to exclude Frank Parker from testifying that "he interpreted epidemiological studies to find exposures within 'one and a half miles or a half mile'" on the basis that this opinion was not described in his report.  (Def.'s Br. (dkt. #449) 22 (quoting Parker Depo. (dkt. #222) 107-08).)  (#13.)  In his general report, Parker certainly reviewed and cited as support the relevant epidemiological studies, even if he stopped short of explicitly describing the 1.25 mile radius.   (Parker Rept. (dkt. #230) pp.30-31.) Defendant is free to question Parker about whether he relied on this specific radius in opining that Pecher experienced substantial, non-occupational exposures, but the court will not preclude Parker from relying on the findings of the epidemiological studies described in his report.  Defendant also challenges whether Parker is qualified to discuss the epidemiological studies based on his deposition testimony that this is more Dr. Anderson's area of expertise.  Again, defendants are free to question Parker about his knowledge of and expertise in applying these studies, but the court will not preclude his testimony regarding either subject.  Moreover, to the extent Parker relied on Anderson's description of the studies, such reliance is wholly appropriate.  *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000) ("Indeed, courts frequently have pointed to an

expert's reliance on the reports of others as an indication that their testimony is reliable.")  Accordingly, this motion is DENIED.

Defendant further seeks to exclude so-called "case studies or case reports," but it is not at all clear what falls within this category.  (#14.)  As far as the court can tell, the defendant appears to be challenging the use of epidemiological studies describing community exposure on the grounds that they are not sufficiently reliable for the jury to consider or for plaintiff's experts to purport to rely on them.  The court already dealt with this argument in its prior opinion and order granting in part and denying in part defendant's *Daubert* motion.  (2/11/16 Op. & Order (dkt. #441) 46-47.)  As the court explained in that opinion, defendant remains free to challenge plaintiff's experts on cross-examination as to whether the communities described in these studies are sufficiently similar to Marshfield to form the basis of expert opinion in this case, but the court will not exclude reference to the studies or expert opinions based on those studies.  To this extent, defendant's motion is DENIED.  The court will, however, RESERVE as to the formal admission of these studies into evidence.

Finally, defendant seeks an order barring plaintiff's experts from testifying regarding inadmissible evidence.  (#15.)  In support of its argument, defendant cites cases which pre-date the 2000 Amendment to Rule 703.  The rule now expressly provides that "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  Fed. R. Evid. 703.  Of course, there is an exception to this rule if the prejudicial effect of the inadmissible facts or data outweighs its probative value.  *Id.*  In

24

light of this balancing test, defendant's general, vague request for exclusion of expert testimony regarding inadmissible evidence is wholly insufficient.  Defendant would need to identify a particular piece of evidence; the court would then need to determine whether the evidence is inadmissible; and assuming it were, defendant would then have to explain why its prejudicial effect outweighs any probative value.  This motion is DENIED without prejudice to defendant identifying at the final pretrial conference any specific challenges to specific pieces of evidence on which plaintiff's experts are expected to testify.

### L.  Pre-1965 Evidence

In this motion, defendant contends that it is well established that the risks associated with non-occupational exposure "were not known or reasonably knowable until 1965 *at the earliest*."  (Def.'s Br. (dkt. #449) 28 (citing cases).)  As such, defendant seeks an order excluding all pre-1965 claims, evidence, testimony or references based on a general lack of knowledge that harm could result from non-occupational exposure. (#16.)  In response, plaintiff points to medical literature cited by Dr. Anderson which pre-dates 1965, but appears to concern more generally the dangers of asbestos fibers without specific reference to non-occupational exposure.  Still, plaintiff points out that the Wagner paper -- one of the epidemiological studies considered by the experts and included in the Bourdès study-of-studies -- is from 1960.

On this limited record, the court will not bar evidence of knowledge of asbestos generally pre-dating 1965, nor will it preclude the jury from considering claims which pre-date 1965.  Defendant may, of course, argue that there was an insufficient basis for

Weyerhaeuser to be aware of the risks of *non-occupational* asbestos exposure before 1965, or even later should the evidence support it, but it will be up to the jury to weigh all evidence and argument.  Accordingly, this motion is DENIED.

### M.  Untimely Evidence

Defendant seeks an order excluding evidence that was not timely or properly disclosed.  (#17.)  This is another example of a motion which is difficult, if not impossible, to decide without specific references to evidence.

In its motion, defendant mentions only one category of evidence:  plaintiff claimed damages for medical bills and funeral expenses in her Rule 26(a) disclosures, but failed to disclose a computation as required under Federal Rule of Civil Procedure 26(a)(1)(A)(iii).   In her response to defendant's motion to exclude, plaintiff acknowledges that she failed to provide a computation, but contends that this oversight was justified or harmless, and therefore the court should not exclude the evidence from trial pursuant to Federal Rule of Civil Procedure 37(c)(1).

Considering the relevant facts for determining whether an omission is justified or harmless, the court agrees with plaintiff that the prejudice or surprise to defendant is limited at best, particularly since plaintiff timely disclosed the *underlying* documentation for these claims.  Moreover, there is sufficient time for plaintiff to cure this oversight by providing a computation (to the extent that she has not already).  Finally, while this omission is consistent with plaintiff counsel's lamentable and general lack of attention to detail in this case as a whole, there is no evidence that this omission was in bad faith or otherwise willful.  On the contrary, some of counsel's failures are due to understandable

triage given the numerous claims it is pursuing, the need for large numbers of claimants to make the representation of individuals cost-effective and the uncertainty of recovery. Accordingly, while this motion is DENIED, plaintiff is ordered to supplement its 26(a) disclosures with a damages computation no later than March 11, 2016, with annotations to specific evidence timely produced in this case.   To the extent defendant seeks to exclude other evidence that was not timely disclosed, or not timely disclosed as required by the applicable federal rules, the motion is DENIED without prejudice to defendant raising specific challenges with reference to a specific piece of evidence at the final pretrial conference.

### N. Punitive Damages

There are two motions concerning punitive damages.  *First*, pursuant to Federal Rule of Civil Procedure 42, defendant seeks an order that any punitive damages claim will be considered separately in a third phase of trial, rather than be included in the second damages phase.  (#18.)  In its brief, defendant argues that "the evidence relevant to compensatory damages and punitive damages, if admitted during the liability stage, . . . would likely cause confusion to the jury or potentially bias the jury's decision on existence of a nuisance."  (Def.'s Br. (dkt. #449) 31.)

On this much, the court agrees, but it does not explain why punitive damages should be tried separately from compensatory damages.  Here, the evidence of intentional disregard of plaintiff's rights that would support an award of punitive damages will likely overlap significantly with that presented during the liability phase on Weyerhaeuser's knowledge of community exposure to asbestos.  Of course, there may be additional

evidence specific to the punitive damages' factors, but the court sees no reason to separate that evidence from evidence supporting a compensatory damages award. The jury will be expressly instructed as to what it should consider in awarding compensatory damages, as compared to what it should consider in determining whether an award of punitive damages is appropriate, and if so, the amount. Consistent with its typical practice, therefore, the court will try damages separate from liability, but sees no good reason for adding a third phase to this trial. Accordingly, this motion is DENIED.

*Second*, defendant seeks an order excluding any evidence of Weyerhaeuser's financial condition until after plaintiff proves she is entitled to punitive damages. (#19.) The jury will be asked two questions with respect to a punitive damages award: (1) did plaintiff demonstrate by clear and convincing evidence that she is entitled to punitive damages and (2) if the answer to the first question is "yes," what amount do you award? In its argument, defendant can stress that the jury should consider various factors, including Weyerhaeuser's financial condition, *only* if it answers the first question "yes," but the court will not postpone the introduction of this evidence to a third phase of trial. The court also notes that defendant is free to seek a directed verdict on a claim of punitive damages after the first phase of trial, at which point the court would have had the benefit of considering the evidence of Weyerhaeuser's knowledge of the extent of asbestos emissions into the community and of the risk of such emissions. Accordingly, this motion is also DENIED.

### O. Trade Organization Information

Defendant seeks to exclude any argument that Weyerhaeuser received notice of the hazards of asbestos from trade organizations, such as the National Safety Council, based merely on one Weyerhaeuser employee's membership in that organization. (#20.) In response, plaintiff argues that evidence of any trade associations that defendant was a member of or participated in is relevant to show that defendant knew, or should have known, of the health hazards associated with asbestos exposure. The court agrees with plaintiff.

At the final pretrial conference, defendant can make specific challenges to specific pieces of evidence on the basis that the evidence is not sufficiently tied to what Weyerhaeuser knew or should have known, but the court will not grant a blank exclusion. Accordingly, this motion is DENIED.

### P. Weyerhaeuser's Record-Retention Policy

In this motion, defendant seeks an order excluding evidence or argument concerning Weyerhaeuser's document retention policy. (#22.) As explained above, the court denied plaintiff's motion to exclude defendant's argument that the absence of records about the dangers of asbestos exposure as evidence of a lack of knowledge. (*See infra* Opinion § I.A.x.) But defendant cannot have it both ways. If Weyerhaeuser intends to open the door by arguing that a lack of contemporaneous records evinces a lack of knowledge of asbestos emissions into the community or of the risks of such exposure, then plaintiff can introduce evidence and argument concerning Weyerhaeuser's document-retention policy. This motion is DENIED.

29

### Q. Descriptions or Characterizations of Plaintiff

Defendant seeks an order barring "any references by plaintiff or her counsel to plaintiff's status as a veteran or other comment intended to incite an emotional response." (#36.) The court agrees with plaintiff that a blanket exclusion is inappropriate. Instead, the court will address the specific references defendant contends are inappropriate. First, defendant seeks to exclude any reference to Mr. Pecher as an "asbestos victim." The court does not find this phrase or similar phrases so inflammatory as to illicit an inappropriate emotional response from the jury. On the contrary, there is no dispute that Mr. Pecher contracted mesothelioma from his asbestos exposure or that mesothelioma caused his death. Of course, the jury will be instructed that its consideration of both causation and damages are limited to *non*-occupational exposure, but that does not make Mr. Pecher any less a victim of asbestos exposure.

Second, defendant seeks to exclude any reference to Mr. Pecher as a veteran. To the extent Mr. Pecher's status as a veteran was an important aspect of his life, plaintiff is free to introduce that fact in a depiction of Mr. Pecher. While simple testimony of that fact is not likely to incite a strong emotional response from the jury, plaintiff *is* cautioned that such a reference should not be emphasized in testimony, and especially in argument.

Third, defendant seeks to exclude any statement from plaintiff that the jury should "send a message" in determining Mr. Pecher's damages. While the court agrees that this statement is not relevant to an award of compensatory damages, it *is* relevant to an award of punitive damages, and plaintiff is free to use that phrase or a similar phrase in arguing that the jury should assess a punitive damage award that will "serve as an

example or warning to defendant or others not to engage in similar conduct in the future." With respect to the specific challenges in the motion, therefore, it is DENIED.

### R. Depiction of Weyerhaeuser as an "Asbestos Company"

Finally, defendant seeks an order excluding plaintiff from using the terms "asbestos company," asbestos defendants," or the "asbestos industry." Defendant contends that the terms are highly prejudicial and do not accurately fit Weyerhaeuser's role or history. Specifically, defendant contends that Weyerhaeuser has never mined asbestos and that it only used asbestos for approximately a 20-year period in its 115-year history. Plaintiff opposes the motion on the basis that Weyerhaeuser's undisputed use of asbestos in manufacturing doors renders it as an "asbestos company" in the "asbestos industry," arguing that those terms have never been limited to those companies or the industry involved in mining or milling asbestos. As to referring to Weyerhaeuser as an "asbestos company or defendant," the court agrees with Weyerhaeuser. There is no evidence that Weyerhaeuser was a manufacturer, distributor or retailer of asbestos. At most, it was a customer, who used asbestos in manufacturing and contributed to the demand for this product. Of course, just as defendant is free to stress its limited role in the asbestos industry – namely, that it only purchases and used asbestos in the production of a product, and even that for a *relatively* limited period of its history -- plaintiff is free to argue as tot eh harm this use created for the larger community generally and plaintiff in particular. This motion is GRANTED.

31

ORDER

IT IS ORDERED that:

1) Plaintiff Janet Pecher's "omnibus motion in limine to exclude unsupported, irrelevant, and unfairly prejudicial arguments and evidence" (dkt. #432) is GRANTED IN PART, DENIED IN PART AND RESERVED IN PART as set forth above.

2) Plaintiff's motion in limine to exclude evidence or testimony regarding workers' compensation claim (dkt. #433) is GRANTED IN PART AND DENIED IN PART.

3) Plaintiff's motion for leave to file plaintiffs' amended response to defendant Weyerhaeuser's Company's consolidated statement or proposed findings of fact (dkt. #454) is DENIED.

4) Defendant Weyerhaeuser Company's motions in limine (dkt. #448) are GRANTED IN PART, DENIED IN PART AND RESERVED IN PART as set forth above.

5) Plaintiff's motion to strike deposition designations by defendant (dkt. #473) is RESERVED.

6) Plaintiff's motion for leave to take preservation depositions in lieu of trial testimony (dkt. #474) is RESERVED.

Entered this 7th day of March, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

32